IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY OLIVIERI, JR.<br>1121 Doris Lane<br>East Norriton, PA 19403 | : : : : | CIVIL ACTION |
| Plaintiff,<br>v. | : : : : | No.: _____ |
| MONTGOMERY COUNTY<br>425 Swede Street<br>Norristown, PA 19404 | : : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : | |

### CIVIL ACTION COMPLAINT

Plaintiff, Anthony Olivieri, Jr., by and through his undersigned counsel, hereby avers as follows:

### I.   INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Montgomery County (hereinafter, "Defendant") of the Americans with Disabilities Act ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq.*), and the Pennsylvania Whistleblower Law (43 P.S. §§ 1421, *et. seq.*) In particular, Plaintiff alleges that he was wrongfully terminated by Defendant (among other claims).[1]

### II.   JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. There lies supplemental

---

[1] Plaintiff will seek leave to amend the instant lawsuit to add claims under the Pennsylvania Human Relations Act ("PHRA") once properly administratively exhausted. Plaintiff was however required to initiate this lawsuit pursuant to a right-to-sue letter prior to such PHRA exhaustion. Plaintiff's PHRA claims will mirror identically his ADA claims, and they are analyzed identically in the Third Circuit as well.

jurisdiction over Plaintiff's state-law claims as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5. Plaintiff is proceeding herein under ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

### III.   PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Montgomery County ("Defendant") is a County in the Commonwealth of Pennsylvania. This County is typically in or around the third-most populous county in

Pennsylvania, consisting of nearly 487 square miles, and operates as a political subdivision containing numerous municipalities.

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV. FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 56-year-old man.

12. Plaintiff was hired by Defendant on or about March 9, 2009; and in total, Plaintiff was employed by Defendant for more than 16 years.

13. Plaintiff performed his role(s) at each stage of his career with Defendant in an exemplary manner. He worked in a management capacity, then a directorship capacity, and ultimately Plaintiff was employed as Defendant's Chief Information Officer ("CIO"). Plaintiff held the job of CIO for most of his tenure with Defendant (since in or about 2012).

14. From in or about November of 2024 through early January of 2025, Plaintiff took a medical leave of absence. This leave of absence was approved as and designated leave under the Family and Medical Leave Act ("FMLA").

15. During the second half of 2024, Plaintiff had been very honest and transparent with Defendants' management explaining *inter alia* that he was suffering from anxiety, panic and depression complications. This is not an exhaustive list of Plaintiff's health problems or symptoms, but rather, a summary (as Plaintiff also has long-term back problems and other physical limitations).

3

16. Plaintiff's medical conditions, as referenced above (and ongoing medical treatment), necessitated a medical leave from November of 2024 through early January of 2025.

17. Between January of 2025 through July of 2025 (when Plaintiff was terminated), Plaintiff had shared and/or discussed with Defendant's management that: (a) he was having flareups of his health problems; (b) part of the reasons he was having health complications and episodes was mistreatment at work; and (c) Plaintiff was in essence asking for accommodation to not be subject to abusive behavior or mistreatment to avoid further complicating his ongoing health treatment (as Plaintiff was getting mental health care).

18. During the approximate six (6) months Plaintiff worked after returning in early January of 2025 from FMLA leave, Plaintiff was subjected to a very hostile work environment (discussed more below). Plaintiff was experiencing:

- Non-inclusion in communications or work-related matters;

- A hostile demeanor from various management that was condescending and aggressive in tone; and

- Non-involvement in various initiatives or committees, delays or obstacles in approvals for work, and other impediments to work completion to make Plaintiff's job unnecessarily difficulty. Plaintiff will provide many examples during litigation.

19. Upon being terminated effective on or about July 9, 2025, Plaintiff was only told there was going to be a "change of direction." Plaintiff was also told, "we are in the midst of many changes." When Plaintiff sought unemployment benefits (post-termination), Plaintiff learned Defendant was contending he was terminated on account of alleged performance problems (<u>despite</u> Plaintiff not having any prior discipline).

20. Some relevant management personnel (still employed as of Plaintiff's termination) whom Plaintiff either interacted with or reported to included but was not limited to:

4

(1) Tina Lawson, Esq. ("Lawson") was elected as the Register of Wills, and she was sworn into office in January of 2024 (and remains in this role).

(2) Dean Dortone ("Dortone") has been the Chief Financial Officer ("CFO") for Defendant for approximately 9.5 years (and remains in this role).

(3) Anthony Brew ("Brew") has been Defendant's Chief Human Resources Officer ("CHRO") since in or about March of 2025 (and remains in this role).

(4) Megan Brown ("Brown") has worked for Defendant for approximately 5.5 years and she has been employed as Defendant's Assistant Director of Human Resources.

(5) Lee Soltysiak ("Soltsiak") is the Chief Operating Officer ("COO") of Defendant and has worked for Defendant since in or about 2012 (previously as the Deputy Chief Operating Officer).

(6) Joseph Coco ("Coco") has worked for Defendant for approximately 13 years and remains in the role of Director of Purchasing.

(7) Stephanie Tipton ("Tipton") is the Deputy Chief Operating Officer of Defendant and has been employed by Defendant since in or about September of 2024.

21.   There is simply no question that a primary reason for Plaintiff's termination was his health disclosures, accommodation needs, and usage of FMLA.

22.   However, in the years leading up to Plaintiff's termination from employment, Plaintiff was viewed negatively by certain higher-level leadership personnel, including Dortone. Plaintiff had formed the opinion that Dortone was unethical, did not follow policies – and more importantly – engaged in fraud, waste, wrongdoing and/or financial mismanagement concealment.[2] By way of background and to provide *some* examples:

**Concealment of $500,000 Wire Fraud**

23.   In the timeframe of 2017, Tom Bonner (then Capital Projects Program Director) was primarily responsible for losing approximately $500,000.00 (allocated to the Justice Center

---

[2] Plaintiff includes this section in his complaint because he believes a determinative factor in his hostile work environment being perpetuated and his ultimate termination was also his whistleblowing (as outlined herein).

Project). An improper wire of such funds had been made to an imposter. Defendant, through leadership, undertook measures to conceal the loss and engage in non-disclosure to avoid embarrassment (which is both wrongdoing and waste).

### Violation of RFP Process & Award of Contract(s) for Kickbacks

24. By mid-2021, Defendant was experiencing significant problems with its existing wireless network (Avaya). The network had become slow, was continually disconnecting, and was experiencing a host of other interruptions and problems.

25. Defendant was required legally to go through a governmental Request for Proposal ("RFP") process. This is a formal, competitive solicitation by a government agency for companies to <u>independently</u> submit a formal proposal to provide services or to undertake a project. The purpose of such a process is to ensure no favoritism, kickbacks, and to solicit the best possible bid from vendors *for usage of taxpayer funding*.

26. Plaintiff and others evaluating options and vendors unanimously determined that Pomeroy Technologies LLC ("Pomeroy") offered the best technology solution(s). It simply wasn't a close call. This was premised upon a Cisco-based solution including a full evaluation of edge networking, security, monitoring, and support across all of Defendant. There were a host of other reasons as well why Pomeroy was proverbially head and shoulders above any other vendor offer(s). Plaintiff, as CIO, confirmed same as well.

27. Pomeroy had submitted the best bid, offered the best quality solutions, and was able to offer reduced pricing through a reseller discount from Cisco. In accordance with budget, government need, taxpayer funding, RFP protocols, and legal compliance – Pomeroy was to be awarded a project totaling nearly $5,000,000.00 (plus ongoing support or maintenance in coming years).

28.     In mid-2023 however, the bid was awarded to ePlus instead. Dortone had previously been employed for approximately five (5) years for ePlus, Inc. ("ePlus"), not properly disclosed at the time. Dortone also didn't recuse himself from ePlus involvement, as would be required for the clear conflict of interest. Instead - - Dortone had conspired, coordinated, and facilitated the sharing of <u>everything</u> submitted by Pomeroy (including its proprietary bid) to Defendant to enable ePlus to create what optically would appear as if to be a more competitive bid. Dortone's misconduct enabled ePlus to modify its bid accordingly to make it pass muster, even if not a better solution.

29.     Dortone had directed Coco to utilize Coco's <u>personal email address</u> to send an unredacted version of Pomeroy's entire bid so as to subvert the Pennsylvania Right-to-Know Law ("RTKL" - 65 P.S. §§ 67.101 *et seq*.). Dortone, by design, wanted public and business-related communications <u>concealed</u> from the public in violation of the RTKL, intentionally violating the RTKL.

30.     Dortone ensured that ePlus was awarded an approximate $5,000,000.00 contract despite that: (a) he had knowingly violated RTKL communication regulations; (b) ePlus offered an inferior solution; and (c) he knowingly violated governmental legal bidding procedures.

31.     Dortone has received ongoing kickbacks from ePlus, inclusive of lavish trips and golf outings. This was *per se* corruption, as it would be understood in the lay or legal sense to any objective person.

**Pattern and Practice of Violating
<u>the Pennsylvania Right-to-Know Law ("RTKL" - 65 P.S. §§ 67.101 *et seq*.)</u>**

32.     Defendant has, through its executive leadership and Procurement management, engaged in a pattern and practice of using private email addresses so as to avoid RTKL legal disclosure requirements.

33. Defendant's leadership knows that it is supposed to utilize business email addresses because they discuss business-related matters, but they intentionally violate the RTKL by and through ongoing usage of personal email addresses for questionable, inappropriate, or other matters for which they seek to avoid legal compliance or disclosure. This unlawful practice <u>existed through Plaintiff's separation from employment</u>. *See e.g. Easton Area Sch. Dist. v. Baxter,* 35 A.3d 1259, 1265 (Pa. Commw. Ct. 2012)(business related emails are subject to the RTKL).

### Continued Wrongdoing & Waste (as to ePlus)

34. Defendant continued to engage in wrongdoing and waste in 2024 and 2025 with respect to its use and retention of ePlus.

35. To perpetuate kickbacks and lavish treatment of Dortone (and others), excess business and payments were made to ePlus.

36. ePlus leadership sought and was provided data and information on funds it could charge *as a maximum*. Stated differently, Dortone was sharing the maximum amount of money ePlus could charge in 2024 and 2025 to ensure that ePlus used <u>all</u> such available funding. This was instead of requiring ePlus to simply provide a cost-for-service or invoicing that *could have* well fallen below available funding. This was gross waste and wrongdoing.

37. Plaintiff for example was being asked by ePlus leadership to just give them a heads up on the exact budget they can max out, and they will discuss it with Dortone on his next golf outing. Plaintiff declined to provide any information and found the entire process corrupt and disgusting. But Plaintiff was aware that Dortone was sharing such information on golf outings with ePlus management per his dialogue with ePlus employees / management.

8

**Printer Project Fraud**

38. In 2024 and 2025, Defendant represented to the public (primarily through County Commissioners) that it saved over $1,000,000.00 in taxpayer funding by *inter alia*: (a) removing individual printers from offices of employees; (b) consolidating printing; (c) requiring usage of a pin # to account for printing; and (d) through other controls. **But it didn't happen or materialize, nor was what Defendant was claiming even remotely accurate at time of such false representations to the public**.

39. Defendant committed fraud upon the public and taxpayers for a project that had not even started by the time it was making representations same had already occurred. Indeed, as of Plaintiff's termination, he was still attempting to obtain compliance to even start the project (as there was internal disagreement about the inconvenience of having to use centralized printers).

**Other Wrongdoing & Waste**

40. Plaintiff is merely giving <u>some of the more prominent examples</u> of wrongdoing and waste above. However, there are many more situations he will outline in the course of this lawsuit. By way of just a few more examples:

   (1) Defendant was engaging in bid-splitting to avoid legal compliance with RFP requirements.

   (2) Defendant did not follow RFP requirements with respect to other RFPs being utilized for vendors.

   (3) Lawson was attempting to have Defendant transition as a whole to ADP from Chronos (despite that both systems were for timekeeping and payroll). Her explanation for the extensive cost of transition and monitoring moving forward was "my husband said it is better." This was gross waste.

   (4) Taxpayer monies were so wasted within Defendant that a commissioner spent an approximate extra $30,000.00 just to slightly modify shelving color in a single office (**despite the prior shelves being new already**).

9

**Plaintiff's Protected Activities**

41. Even though Plaintiff references wrongdoing and waste *supra* that occurred many years ago, he does so because in 2024 and 2025 he was complaining to Defendant's above-referenced management about an accumulation of such wrongdoing and waste (even referencing the history of such misconduct by Defendant in 2024 and 2025).

42. In 2024 and 2025, Plaintiff was very vocal using terms such as "fraud," "waste," "illegal," and other descriptors to complain to Defendant's management that there was wrongdoing and waste - - at times expressing he didn't want to be involved or sign certain documents.

43. Plaintiff experienced hostility for his legal concerns with respect to wrongdoing and waste – and during Plaintiff's last approximate year of employment – he was disclosing and discussing his disabilities explaining that mistreatment, yelling or bullying was exacerbating his mental health.

44. Determinative factors in Plaintiff's termination from employment were the following:

    (1) Protected whistleblowing;

    (2) FMLA usage;

    (3) Plaintiff's actual or perceived disabilities;

    (4) Plaintiff's requested medical accommodations; and

    (5) Complaints of retaliatory treatment.

45. Contemporaneous to his termination from employment, Plaintiff was offered an <u>unsolicited</u> severance agreement (titled "Separation Agreement, General Release and Waiver of Claims"). This Agreement offered Plaintiff $30,213.65 in exchange for him waiving all

retaliation and discrimination claims against Defendant (among all other known or unknown claims). Under the circumstances of Plaintiff's termination, no policy of Defendant required the sum of severance to be offered to Plaintiff.

46. The offer of a severance package to Plaintiff as aforesaid is well-established admissible evidence of discrimination, pretext, and retaliation (and would contradict any purported performance or misconduct-related rationale for termination if Defendant attempt to shift reasoning for termination during a lawsuit). *See e.g. Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011)(finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267 (D. Nev. 2009)(denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011)(severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); Brandy v. Maxim Healthcare Servs., Inc., 2012 WL 5268365, at *2 (N.D. Ind. 2012)(holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

47. As a direct, proximate and actual cause of Defendant's mistreatment, hostility, and adverse actions taken against him, Plaintiff has suffered significant emotional and financial harm.

### First Cause of Action
### Violations of the Americans with Disabilities Act, as amended ("ADA")
### ([1] Discrimination & [2] Retaliation)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff suffered from legally-protected disabilities, and Defendant violated the ADA, as amended, by: (1) not accommodating Plaintiff; (2) terminating him because of his actual, perceived, and/or record-of disabilities; and (3) by engaging in unlawful retaliation by taking the aforesaid actions on account of Plaintiff's protected activities (namely expressing his ADA protections and requesting reasonable accommodations).

50. These actions as aforesaid constitute violations of the ADA, as amended.

### Second Cause of Action
### Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation)

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

53. Plaintiff was subjected to a hostile work environment and ultimately terminated on account of his FMLA usage and FMLA protected activities.

54. These actions as aforesaid constitute unlawful retaliation in violation of the FMLA.

### Third Cause of Action
### <u>Violations of Pennsylvania's Whistleblower Law ("PWL" - 43 P.S. §§ 1421 *et. seq*.)</u>
### (Retaliation)

55. Plaintiff was an "employee" as defined by §1422, as he was "a person who perform[ed] a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for [his] employer."

56. Defendant was at all times an "employer" as defined by §1422.

57. Plaintiff made good-faith reports of "wrongdoing" to protect himself, the public, and to avoid waste or wrongdoing concealment.

58. Plaintiff's hostile work environment and subsequent termination for reporting "wrongdoing" or "waste" constitutes violations of the Pennsylvania Whistleblower Law.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination / retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits;

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D. Plaintiff is to be awarded liquidated and/or punitive damages as permitted by applicable laws herein;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F. Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G. Plaintiff is to receive a trial by jury as set forth in the caption of this lawsuit.

 Respectfully submitted,

 **KARPF, KARPF & CERUTTI, P.C.**

By: _____
 Ari R. Karpf, Esq. (91538)
 Christine E. Burke, Esq. (308166)
 8 Interplex Drive, Suite 210
 Feasterville-Trevose, PA 19053
 215-639-0801 (P)
 215-639-4970 (F)
 akarpf@karpf-law.com
 cburke@karpf-law.com

Dated: December 1, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Anthony Olivieri, Jr. | : | CIVIL ACTION |
| v. | : | |
| Montgomery County | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (x)

| 12/1/2025 | _[signature]_ | | Plaintiff |
|---|---|---|---|
| **Date** | **Attorney-at-law** | | **Attorney for** |
| 215-639-0801 | 215-639-4970 | | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Defendants place of business__

**RELATED CASE IF ANY:** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐
2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐
3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐
4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐
5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

**Civil Litigation Categories**

*A. Federal Question Cases:*

1. Indemnity Contract, Marine Contract, and All Other Contracts)
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Wage and Hour Class Action/Collective Action
6. Patent
7. Copyright/Trademark
8. Employment
9. Labor-Management Relations
☒ 10. Civil Rights
11. Habeas Corpus
12. Securities Cases
13. Social Security Review Cases
14. Qui Tam Cases
15. Cases Seeking Systemic Relief  *see certification below*
16. All Other Federal Question Cases. *(Please specify)*:_____

*B. Diversity Jurisdiction Cases:*

1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify)*:_____
7. Products Liability
8. All Other Diversity Cases: *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
OLIVIERI, JR., ANTHONY

**(b)** County of Residence of First Listed Plaintiff: Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS
MONTGOMERY COUNTY

County of Residence of First Listed Defendant: Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION
[X] 3 Federal Question (U.S. Government Not a Party)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
*(For Diversity Cases Only)*

## IV. NATURE OF SUIT
[X] 445 Amer. w/Disabilities - Employment

## V. ORIGIN
[X] 1 Original Proceeding

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PA Whistleblower Law.

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/1/2025
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE